UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| DEEPAK KADEMANI, DMD, MD, FACS, | Civil No. 09-219 (JRT/FLN) |
| Plaintiff, | |
| v. | ORDER ON MOTIONS *IN LIMINE* |
| MAYO CLINIC, | |
| Defendant. | |

James H. Kaster, Matthew H. Morgan, and Sarah W. Steenhoek, **NICHOLS KASTER, PLLP**, 80 South Eighth Street, Suite 4600, Minneapolis, MN 55402, for plaintiff.

David P. Bunde, Norah E. Olson Bluvshtein, Andrew F. Johnson, and S. Jamal Faleel, **FREDRIKSON & BYRON, PA**, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402; Joanne L. Martin, **MAYO CLINIC**, 200 1st Street SW, Rochester, MN 55905, for defendant.

After summary judgment, this case revolves around whether Mayo Clinic ("Mayo") breached a confidential Separation Agreement (the "Agreement") with Dr. Kademani by virtue of information Dr. Sarr, a Mayo employee, relayed to a Dr. Warshaw, a Massachusetts General Hospital ("MGH") employee. Mayo has broadly moved *in limine* to exclude evidence relating to the 2007 peer review that Mayo conducted of Dr. Kademani on the ground that such evidence is irrelevant to the breach of contract claim that is the subject of trial. (Docket No. 227.) Kademani counters that this evidence is background information necessary to equip the jury to understand the

contractual language at issue.  The Court will grant the motion in part and deny it in part, as explained below.[1]

The central issue for trial is whether Mayo breached the Agreement through Dr. Sarr's statement to Dr. Warshaw that MGH should "do [its] homework" with respect to the potential hire of an unnamed Mayo surgeon.  Kademani intends to introduce evidence relating to a 2007 peer review that Mayo conducted of his practice, the propriety of which Kademani disputed; Kademani argues that this peer review evidence is relevant to the breach of contract claim in that it bears on whether Dr. Sarr's statement revealed "information concerning the disputes that arose between the parties" in violation of the Agreement.  Mayo seeks to exclude the peer review evidence on the ground that it relates only to claims dismissed on summary judgment.  Specifically, Mayo seeks to exclude broad categories of evidence, including: any evidence about whether Mayo conducted the peer review due to Kademani's race, ethnicity, or religion; whether the peer review was unfounded and initiated for improper and discriminatory reasons; whether the composition of the peer review panel was proper; whether the peer review was initiated as a function of an alleged "turf battle" between the Ear, Nose, and Throat

---

[1] The Court will also grant Kademani's motion to exclude Dr. Kevin Arce from testifying, (Docket No. 192), because testimony as to whether or not there actually was a "turf war" between different departments at Mayo – the only subject of Arce's projected testimony – is not relevant to whether Mayo breached the contract.

("ENT") and the Oral and Maxillofacial Surgery ("OMS") Divisions; and any of the information considered by, or any of the interviews conducted by, the peer review board.[2]

The Court previously observed that the phrase "information concerning the disputes that arose between the parties" is subject to multiple interpretations. (Order Granting in Part and Denying in Part Mot. for Summ. J. at 27, July 15, 2011, Docket No. 158 ("although [Dr. Sarr's] comment was not a direct discussion of the Separation Agreement or the dispute between Kademani and Mayo, Sarr's comment could be construed to relate to such a dispute.").)  Parol evidence – including statements between the parties or circumstances surrounding the agreement – is therefore admissible to explain it. *Flynn v. Sawyer*, 272 N.W.2d 904, 908 (Minn. 1978) ("When parties reduce their agreement to writing, parol evidence is ordinarily inadmissible to vary, contradict, or alter the written agreement. But parol evidence is admissible when the written agreement is incomplete or ambiguous to explain the meaning of its terms.")  Indeed, the Court finds that a certain amount of parol evidence is necessary to equip the jury to understand the contractual phrase "disputes that arose between the parties."

The question is how much parol evidence should be admitted.  On the one hand, the Court will not exclude in blanket fashion all evidence relating to the peer review process as Mayo requests.  On the other hand, much of the peer review information – particularly, for example, confidential patient information, even if redacted – need not be

---

[2] More specifically, this evidence includes: a negative promotion recommendation form completed by Dr. Van Ess; resident complaints regarding Dr. Kademani; the external reviewers' analysis of the cases reviewed by the peer review panel; and a letter authored by Drs. Beatty and Olson of the ENT department allegedly showing the animus these physicians exhibited toward Dr. Kademani before he started working at Mayo.

aired for the jury to understand the existence and basic nature of the disputes between Mayo and Dr. Kademani.  The overarching benchmark, then, is simply this: the parties can introduce such evidence as is necessary to equip the jury to understand the existence and the basic nature of the "disputes that arose between the parties."  The jury needs to understand this phrase in order to determine whether Dr. Sarr's "do your homework" comment related to these disputes.  The disputes include Kademani's **belief** that the peer review was improperly initiated or flawed and that certain physicians were allegedly displeased by Kademani's apparent encroachment on their professional turf.  In short, Kademani can present enough evidence to introduce the jury to these disputes.

Kademani cannot, however, undertake to litigate the merits of the peer review process, or to establish that there was, in fact, a turf war between the OMS and ENT divisions.  These issues are irrelevant to whether Mayo breached the contract because even an improper peer review – or one animated by a turf war between the OMS and ENT divisions – would not make Mayo's breach more or less likely.  *See* Fed. R. Evid. 401.  The same is true of whether Mayo breached its peer review policies or that members of the peer review group were biased.  Because Dr. Sarr – the Mayo employee who made the allegedly offending "do your homework" statement – was not involved in the peer review process, those issues are irrelevant to whether Mayo breached the Agreement.  Moreover, the **substance** – as opposed to the fact – of the information and records considered during the peer review process is irrelevant for the same reason: it does not bear on the likelihood of Mayo's breach of the Agreement.  In short, it is enough for the jury to understand the basic nature of the disputes that existed between Mayo and

Dr. Kademani at the time of Dr. Sarr's phone call, and to grasp Kademani and Mayo's respective positions. The parties should tailor presentation of the evidence toward this end, and on proper objection the Court will determine whether the evidence presented is cumulative or otherwise inadmissible in light of this standard.

### ORDER

Based on the foregoing and the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Exclude Protected Health Information and Evidence Regarding Whether Peer Review was Justified or Properly Conducted [Docket No. 227] is **GRANTED in part** and **DENIED in part** as indicated in this Order.

2. Plaintiff's Motion to Exclude Dr. Arce From Testifying at Trial [Docket No. 192] is **GRANTED**.

DATED: May 16, 2012           _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                JOHN R. TUNHEIM
                                       United States District Judge