**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| DEEPAK KADEMANI, | Civil No. 09-219 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR RELIEF FROM JUDGMENT** |
| MAYO CLINIC, | |
| Defendant. | |

James H. Kaster, Adrianna Shannon, Matthew H. Morgan, and Sarah W. Steenhoek, **NICHOLS KASTER, PLLP**, 80 South Eighth Street, Suite 4600, Minneapolis, MN 55402, for plaintiff.

David P. Bunde, Norah E. Olson Bluvshtein, Andrew F. Johnson, David Gray Waytz, and S. Jamal Faleel, **FREDRIKSON & BYRON, PA**, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402; and Joanne L. Martin, **MAYO CLINIC**, 200 First Street Southwest, Rochester, MN 55905, for defendant.

This is a breach of contract action that has been bifurcated at the parties' request. At the conclusion of the liability phase of the trial, the jury found that defendant Mayo Clinic ("Mayo") breached a Confidential Separation Agreement it had entered into with plaintiff Dr. Deepak Kademani. Before the Court is Mayo's motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b). Mayo's motion is based on its belief that Kademani testified falsely during the liability phase of the trial. For the

reasons below, Mayo has failed to establish grounds for relief from judgment and the Court will deny Mayo's motion.[1]

**BACKGROUND**

Kademani, worked for Mayo as a surgeon but was placed on administrative leave during a peer review of his practice in 2007. (Kademani Trial Tr. 287, 348, June 26, 2012, Docket No. 339.) The peer review ended without adverse conclusions or discipline and Kademani and Mayo entered into a Confidential Separation Agreement where Kademani agreed to resign and both parties agreed to not "disclose any information concerning the disputes that arose between the parties." (Fourth Aff. of Adrianna H. Shannon, Ex. 4 & Ex. 5 at 1, 3, Oct. 23, 2012, Docket No. 436.)

Kademani subsequently received an offer of employment from Massachusetts General Hospital ("MGH"). (Kaban Trial Tr. 804:11-19, Sept. 17, 2012, Docket No. 378.) Before Kademani's appointment was finalized, a surgeon and professor from Mayo contacted MGH's Chief of Surgery and informed the Chief of Surgery that "I think

---

[1] Mayo previously filed a motion for judgment as a matter of law, a new trial, or an amended judgment on grounds separate from those raised in the present motion. (Def.'s Renewed Mot., June 27, 2012, Docket No. 345.) However, the Court determined that it would "wait to hear any post-trial motions until after the damages trial has concluded" and asked Mayo to withdraw its motion and refile it after the second phase of the trial. (Twelfth Aff. of James H. Kaster, Ex. 16 (E-mail to parties), Nov. 13, 2012, Docket No. 462.) In light of the Court's previous instruction to the parties, Mayo should have requested permission to file its motion for relief from judgment prior to the damages phase. Nonetheless, because the motion is fully briefed and its resolution may have some bearing on the damages phase of the trial, the Court will resolve the motion at this juncture.

Because the Court will deny Mayo's motion, it need not address Kademani's argument that relief under Rule 60(b) is not available after the first phase of a bifurcated trial.

you should do your homework" with regard to Kademani. (Fourth Shannon Aff., Ex. 9 (Dep. of Dr. Michael Sarr ("Sarr Dep.") 19:10-17).) Shortly thereafter, Dr. Leonard Kaban, who is in charge of hiring at MGH, informed Kademani that Kademani might not successfully complete the credentialing process and Kademani decided to withdraw his application. (Kaban Trial Tr. 838:10-25, Docket No. 378.)

Mayo argued extensively during the liability phase of trial that Kademani had failed to disclose information about his dispute with Mayo during the application process and that he lost his opportunity at MGH due to his lack of candor, not due to Mayo's breach of the Confidential Separation Agreement. (*See, e.g.*, Fourth Shannon Aff., Ex. 13, (Bunde Opening Argument), at 159-61.) The present motion is based on Mayo's contention that Kademani lied about when, and to what extent, he disclosed information to MGH.

At his deposition, Dr. Kaban testified that Kademani did not disclose the peer review "upfront in the interview process," but that Kademani did confirm that the peer review had occurred "[a]t a subsequent time."[2] (*See* Fifth Decl. of David G. Waytz, Ex. A (Dep. of Dr. Leonard Kaban) 42-43, Nov. 5, 2012, Docket No. 448.) Dr. Kaban's deposition testimony was read to the jury because he was not available to testify live.

Kademani testified at trial that he told Dr. Kaban about the peer review at Mayo before MGH made an offer of employment. (Kademani Trial Tr. 415:15-22, Sept. 17,

---

[2] While the timing of various events that occurred in somewhat close succession is not absolutely clear, Dr. Kaban appeared to testify that the "subsequent time" was after MGH offered Kademani, but before the phone call from Mayo that constituted a breach of the Confidential Separation Agreement. (*See* Kaban Trial Tr. 805:8-12, 817:8-20, Docket No. 378.)

2012, Docket No. 377.)   Kademani's counsel reminded Kademani that his testimony regarding the timing of his disclosures appeared to be inconsistent with the testimony offered by Dr. Kaban and Kademani asserted his belief that Dr. Kaban's recollection was incorrect.  (*Id.* 416:3-12.)   Kademani had also been made aware of the potential inconsistency between his and Dr. Kaban's recollections at a deposition prior to trial. (*See* Fifth Waytz Decl., Ex. B (Dep. of Dr. Deepak Kademani) 278-79.)   Kademani testified in greater depth at trial regarding the nature of his disclosures to MGH, particularly in response to cross-examination by Mayo's counsel.  (*See* Kademani Trial Tr. 467, 475-76, Docket No. 377.)

During discovery for the damages phase, the parties deposed Dr. Kaban for a second time.[3]  Counsel for Mayo told Dr. Kaban that Kademani had testified that "before he even came out to interview with you that he told you about all of these issues."[4]  (Fifth Waytz Decl., Ex. C (Second Dep. of Dr. Leonard Kaban) 139:20-22.)   Counsel for Mayo then asked Dr. Kaban if Kademani's testimony was true and Dr. Kaban asserted that Kademani had lied.  (*Id.* 140:3-6.)   Dr. Kaban further asserted that Kademani's version of the story did not make sense because he recalled that MGH had increased its offer to

---

[3] In a November 19, 2012 order, the Court affirmed a protective order relating to the second deposition of Dr. Kaban and held that evidence Mayo elicited at the second deposition regarding Kademani's purported lack of candor during the application process will be inadmissible at the damages phase. (*See* Memo. Op. and Order at 5 n.3, Nov. 19, 2012, Docket No. 494.)

[4] It is not clear that this was an accurate description of Kademani's testimony because Kademani testified that he told Dr. Kaban about the peer review before he received an offer of employment. (Kademani Trial Tr. 415:15-22, Docket No. 377.)

Kademani, which it would not have done if Kademani had already disclosed his issues at Mayo. (*Id.* 106:14-107:1, 140:6-12.)

In addition to Dr. Kaban's second deposition, Mayo points to documentary evidence that it contends casts doubt on Kademani's testimony regarding his disclosures to MGH. For instance, on February 20, 2008, after having offered Kademani the position, Dr. Kaban wrote to MGH's director of credentialing and enthusiastically requested Kademani's appointment. (*Id.*, Ex. E.) Mayo also notes that the first piece of documentary evidence demonstrating that Kademani disclosed his issues at Mayo to MGH is a letter Kademani forwarded to MGH on March 2, 2008. (*Id.*, Ex. G.)

## ANALYSIS

### I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 60(b) allows a court to relieve a party from a final judgment for a number of reasons, including "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)" and "fraud . . . , misrepresentation, or misconduct by an opposing party." *See* Fed. R. Civ. P. 60(b)(2) & (3). Rule 60(b) allows for "'extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances.'" *U.S. Xpress Enterps., Inc. v. J.B. Hunt Transport, Inc.*, 320 F.3d 809, 815 (8th Cir. 2003) (quoting *United States v. Young*, 806 F.2d 805, 806 (8th Cir. 1987)). Rule 60(b) motions are viewed with disfavor due to the sanctity of final judgments. *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 515 (8th Cir. 1984). That said, Rule 60(b) is necessary to

"maintain[] the integrity of the trial process" and to ensure that "justice be done in light of all the facts." *Id.* (internal quotation marks omitted).

## II.   DISCUSSION

Mayo's central argument is that "Dr. Kaban's post-trial testimony, when considered in light of all the circumstantial evidence presented at trial, constitutes clear and convincing evidence that [Kademani] lied at trial." (Def.'s Memo. in Support at 13, Nov. 5, 2012, Docket No. 447.)  Mayo contends that "[Kademani]'s perjury . . . constitutes grounds for relief under [Rule] 60(b)(2) as newly discovered evidence" and that there is also sufficient evidence to warrant relief under Rule 60(b)(3). (*See id.* at 13-15.)  Neither argument is persuasive, and the Court will address them in turn.

To prevail under Rule 60(b)(2), which addresses newly discovered evidence, the moving party must demonstrate that: (1) the evidence was discovered after trial; (2) due diligence was exercised to discover the evidence; (3) the evidence is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence is such that a new trial would probably produce a different result. *Schwieger v. Farm Bureau Ins. Co. of Neb.*, 207 F.3d 480, 487 (8th Cir. 2000).  Mayo's claim falls short for a number of reasons, any of which is independently sufficient to deny its request for relief under Rule 60(b)(2).

First, there is no "newly discovered evidence." Whatever conflict exists between Dr. Kaban's testimony and Kademani's testimony existed at trial. Dr. Kaban's assertion at his second deposition that Kademani "lied" was a more explicit way to highlight the

conflicts in the testimony, but nothing new was discovered by virtue of Dr. Kaban's assertion. Even if Dr. Kaban's assertion constituted "newly discovered evidence," the Court would deny Mayo's motion because any conflict between Kademani and Dr. Kaban's recollections was apparent prior to the liability phase of the trial and Mayo could have been more diligent in attempting to obtain additional discovery from Dr. Kaban prior to the liability phase. Further, because the jury already heard the competing testimony of Dr. Kaban and Kademani, Dr. Kaban's additional, explicit assertion that Kademani "lied" would likely have been immaterial. Finally, because any conflict was already before the jury, Dr. Kaban's assertion is merely impeaching.[5]

Mayo's claim under Rule 60(b)(3) fares no better. To prevail under Rule 60(b)(3), the moving party must demonstrate by clear and convincing evidence that the opposing party's fraud, misrepresentation, or misconduct "prevented the movant from fully and fairly presenting its case." *Atkinson v. Prudential Prop. Co.*, 43 F.3d 367, 372-73 (8th Cir. 1994). Mayo has not presented clear and convincing evidence that Kademani testified to facts that he did not believe to be true. That fact that the testimony of two witnesses seems inconsistent and one accuses the other of lying is not nearly sufficient to obtain relief from judgment. *See Simpson v. Suliene*, No. 08-CV-54, 2008 WL 4279938, at *2 (W.D. Wis. Sept. 17, 2008) ("Factual disputes occur in the context of litigation all

---

[5] Further still, Dr. Kaban's assertion that Kademani lied would likely be inadmissible because it is impermissible, speculative opinion testimony. *See, e.g.*, *United States v. Harris*, 471 F.3d 507, 511 (3d Cir. 2006) ("[W]e follow our sister circuits and hold that asking one witness whether another is lying is inappropriate. Such questions invade the province of the jury and force a witness to testify as to something he cannot know, i.e., whether another is intentionally seeking to mislead the tribunal.").

the time. Very rarely it is appropriate for a court to take sides and make a determination regarding a party's credibility; that is an issue normally reserved for the jury."). And the fact that documentary evidence may tend to support one witness's version of the events does not approach clear and convincing evidence that a witness knowingly engaged in fraud, misrepresentation, or misconduct. If a party could obtain relief from judgment any time one witness thought that another witness had lied and the party could point to evidence tending to support one witness's version of the events, few judgments would be safe.

Mayo relies heavily on *Rosebud Sioux Tribe*, which is easily distinguishable from the present case. In *Rosebud Sioux Tribe*, the court granted relief from a civil judgment when a key witness later provided grand jury testimony that dramatically contradicted testimony he had given in a deposition prior to the civil trial. *See* 733 F.2d at 514-17 ("The grand jury testimony flatly contradicts the testimony [the witness] gave in two other proceedings . . . . [H]is inconsistent stories demonstrate that he is a liar and, as such, a witness whose testimony is to be discredited."). In that case, the later testimony constituted newly discovered evidence and also clear and convincing evidence of misconduct. In order for *Rosebud Sioux Tribe* to be analogous to the present case, Kademani himself would have needed to say "I lied" in a second deposition. The situation at hand is categorically different.

Mayo has neither presented newly discovered evidence warranting relief from judgment under Rule 60(b)(2), nor has it presented clear and convincing evidence of

fraud, misrepresentation, or misconduct warranting relief from judgment under Rule 60(b)(3).  Therefore, the Court will deny Mayo's motion for relief from judgment.[6]

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Mayo's motion for relief from judgment [Docket No. 445] is **DENIED**.

DATED:  December 3, 2012           ____s/ John R. Tunheim____
at Minneapolis, Minnesota.                JOHN R. TUNHEIM
                                          United States District Judge

---

[6] Kademani asks the Court to strike Mayo's allegations of perjury from the record on the ground that the allegations constitute scandalous material because they unnecessarily reflect on Kademani's moral character.  *See Crow v. Wolpoff & Abramson*, Civ. No. 06-3228, 2007 WL 1247393, at *3 n.2 (D. Minn. Apr. 19, 2007).  Mayo will not be permitted to make such accusations at the damages phase, but the Court does not find that the allegations are so derogatory, frivolous, or unnecessary as to warrant striking them from the record.  *Cf. Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) ("[M]otions to strike . . . are viewed with disfavor and are infrequently granted.") (internal quotation marks omitted).